UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE GREEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 10-cv-02649-RS  (MEJ)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 102 |

## INTRODUCTION

Pending before the Court is Plaintiff Denise Green's ("Plaintiff") Motion to Strike Portions of Defendants' Expert Scot Haug's Rule 26 Report. Dkt. No. 102. Plaintiff seeks to strike portions of Mr. Haug's report pursuant to Federal Rule of Civil Procedure ("Rule") 37, arguing that the opinion departs from the Court's scheduling order regarding expert disclosures. Defendants City and County of San Francisco and Sergeant Ja Han Kim ("Defendants") have filed an Opposition (Dkt. No. 105) and Plaintiff filed a Reply (Dkt. No. 108). The Court finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Plaintiff's Motion for the following reasons.

## BACKGROUND

The facts of this case are set forth in the Court's September 23, 2011 *Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motions for Partial Summary Judgment*. Dkt. No. 65. The suit arises out of the mistaken belief that Plaintiff was driving a vehicle with a license plate that did not match her car and that had been reported stolen. *Id.* at 1. The Automatic License Plate Recognition ("ALPR") System utilized by Officer Alberto Esparza

indicated that the plate on Plaintiff's Lexus, 5SOW350, matched 5SOW750, which was reported as belonging to a stolen GMC vehicle. *Id.* Plaintiff appealed the Court's summary judgment order, and on May 12, 2014, the Ninth Circuit reversed the summary judgment in favor of Defendants and affirmed the denial of summary judgment for Plaintiff. The Ninth Circuit's decision is reported in *Green v. City & County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014).

Although the parties disclosed experts in this case in 2011, Defendants' expert, Dale Stockton, could no longer testify as their ALPR expert after the Ninth Circuit's reversal. Mot. at 1. The parties subsequently stipulated that the last day for Defendants to "augment their expert disclosure with an expert to replace their previously disclosed expert Dale Stockton shall be December 17, 2014." Dkt. No. 98 at 2. The stipulation was premised on the agreement that "[t]he scope of the Defendant's [sic] new expert testimony shall be limited to the topics addressed in Mr. Stockton's expert disclosure in this case." *Id.* On September 16, 2014, the Court issued a case management scheduling order, directing that "[t]he scope of the defendants' new expert's testimony shall be limited to topics addressed in Mr. Stockton's expert disclosure in this case." Dkt. No. 99, ¶ 3(A). Defendants designated Scot Haug to replace Mr. Stockton.

Plaintiff now moves the Court to strike portions of Mr. Haug's report that she contends exceed the scope of the parties' stipulation and the Court's order.

**LEGAL STANDARD**

Parties wishing to rely on expert opinions must disclose those opinions and the facts or data considered in forming them "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 26(e)(2), "[a]ny additions or changes to [the] information [in an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Under Rule 26(a)(3), pretrial disclosures must be made at least thirty days before trial unless the presiding judge orders otherwise. Fed. R. Civ. P. 26(a)(3)(B).

Failure to comply with a court's discovery orders may lead to discovery sanctions pursuant Rule 37. Moreover, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1). The court may also impose other or different sanctions provided for in Rule 37. Fed. R. Civ. P. 37(c)(1)(C).

The Advisory Committee Notes to the 1993 amendments to Rule 37 describe subsection (c)(1) as a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material" that must be disclosed pursuant to Rule 26. Rule 37(c)(1) sanctions based on failure to disclose evidence in a timely manner may be appropriate "even when a litigant's entire cause of action or defense" will be precluded. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In this way, Rule 37 "gives teeth" to Rule 26's disclosure and supplementation requirements, including the requirement that parties follow court scheduling orders in making their disclosures. *Id.*

## DISCUSSION

Plaintiff argues that Mr. Haug's report is an improper supplemental expert report because it addresses topics that Mr. Stockton's report did not. Mot. at 3. Plaintiff contends that Mr. Stockton's report is limited to two topics: (1) the reasonableness of Sergeant Kim's belief that there was reasonable suspicion to conduct a traffic stop of Plaintiff's car; and (2) that the San Francisco Police Department's ("SFPD") policies and training on the ALPR system met national standards. *Id.* at 5. In contrast, Plaintiff argues that Mr. Haug's opinions go beyond those expressed in Mr. Stockton's report, thus violating the Court's September 16 scheduling order. *Id.* She maintains that the Court should strike these opinions, just as it would if Mr. Stockton had provided a supplemental report under Rule 26(e) that contained new opinions not in his first report. *Id.* at 10. Plaintiff also notes that Defendants have retained another police practices expert, Don Cameron, whose report addresses the topics that Mr. Haug's report addresses and that Mr. Stockton's report did not—such as the propriety of high-risk felony stop tactics, and use of force—so adhering to the stipulation and order will not unfairly prejudice Defendants. *Id.* at 10-11.

Plaintiff contends that Mr. Haug's report harms her in three ways: (1) it has required her to spend time and resources to bring this motion; (2) allowing Mr. Haug to testify about topics not contained in Mr. Stockton's report will drive up costs for both sides, because Plaintiff's counsel

3

1    will have to spend more time preparing to depose, and more time deposing, Mr. Haug about the
2    topics and opinions that Mr. Stockton did not address; and (3) the new opinions in Mr. Haug's
3    report appear to be integral to Defendants' legal arguments, and so are not harmless to Plaintiff.
4    *Id.* at 11.  Plaintiff requests that the Court strike and exclude the opinions in Mr. Haug's report that
5    exceed the scope of Mr. Stockton's report and preclude him from using exhibits or demonstrative
6    aids at trial, since Mr. Stockton explicitly stated in his report that he would not use any. *Id.* at 11-
7    12.
8           In response, Defendants argue that Mr. Haug's report does not violate the Court's
9    September 16 case management scheduling order, because it addresses the same "topics" as Mr.
10   Stockton's report.  Opp'n at 1.  Defendants maintain that Mr. Haug "generated an independent and
11   unbiased report on the same topics as Dale Stockton from his own perspective, which invariably
12   produced a different report." *Id.*  Moreover, they did not provide Mr. Haug with a copy of Mr.
13   Stockton's report "because doing so would bias his opinion and improperly color his conclusions,"
14   but instead provided him with case materials and gave him the same topical instructions as Mr.
15   Stockton. *Id.* at 2.  Defendants contend "that the topics of the opinions offered by Dale Stockton
16   and Scot Haug are the same, but their bases are not identical—as would be expected from two
17   separate people analyzing the same topics from their own unique viewpoints." *Id.*  They maintain
18   that the "only way for Defendants to maintain the level of synchronicity between the reports that
19   Plaintiff seeks would be to spoon-feed Chief Haug opinions, direct him to copy Mr. Stockton's
20   report, or otherwise improperly influence the outcome of his expert evaluation." *Id.* at 2-3.
21   Defendants argue that they would be severely prejudiced if they were to employ these tactics as
22   Mr. Haug's opinions "would be biased and subject to cross examination that would make them
23   suspect to a jury." *Id.* at 3.
24          Defendants also argue that Plaintiff is not prejudiced by Mr. Haug's report because there is
25   no surprise—no expert discovery has taken place, and Plaintiff's counsel has the opportunity to
26   depose Scot Haug and explore the bases and scope of his opinions. *Id.*  Defendants maintain that
27   Mr. Haug did not prepare a supplemental report, but instead prepared an initial report on the same
28   topics as Mr. Stockton. *Id.* at 4.  While Plaintiff contends that Mr. Haug's opinions go beyond

4

those expressed in Mr. Stockton's report, Defendants argue that these are factual differences that form the basis for Mr. Haug's opinions on the two core topics addressed by Mr. Stockton: (1) whether Sergeant Kim's conduct was objectively reasonable in making the traffic stop; and (2) whether SFPD's ALPR training was reasonable. *Id.* at 5.

Having reviewed the parties' arguments and compared Mr. Stockton's and Mr. Haug's reports, the Court finds that Plaintiff's motion must be denied. As a preliminary matter, the Court finds that Mr. Haug's report is not a supplemental report, but rather, his report replaces Mr. Stockton's, who is unavailable. The new report is justified by the delay between expert disclosure and the appeal in this case, which led to the unavailability of Mr. Stockton. Recognizing this, the September 16, 2014 case management scheduling order permits Defendants to "augment" their expert disclosure with an expert to "replace" their previously disclosed expert. Dkt. No. 99, ¶ 3(A). Although the order limits the scope of Mr. Haug's report to topics addressed in Mr. Stockton's report, it does not require that Mr. Haug review Mr. Stockton's report and use the same factual basis for his opinion, or that the viewpoints and thought processes be the same.

Further, the Court finds that Plaintiff is not prejudiced by the timing of Mr. Haug's report. Defendants served Plaintiff a copy of the report on December 17, 2014, *see* Hannawalt Decl. ¶ 8, Dkt. No. 106, yet under the September 16 scheduling order, expert witness discovery does not close until May 22, 2015 (Dkt. No. 99, ¶ 3(B)). As noted by Defendants, expert discovery has not taken place, and Plaintiff still has the opportunity to depose Mr. Haug. Opp'n at 3. In response, Plaintiff argues that Defendants' position would leave them "free to defy a court order . . . by having their experts offer new opinions, and generate new or supplemental expert reports, right up to when their expert is deposed—or perhaps even up to trial in the event an opposing party chooses not to depose a defense expert." Reply at 2. She notes that "Rule 26(a)(2)(B) requires expert reports to contain 'a complete statement of all opinions the witness will express and the basis and reasons for them,' in part, so that 'the length of the deposition of such experts should be reduced, *and in many cases the report may eliminate the need for a deposition*.'" *Id.* (citing Fed. R. Civ. P. 26, advisory committee note (1993 Amendments, ¶ 2)) (emphasis in Reply). However, Plaintiff cites no authority for the proposition that a party cannot conduct discovery regarding an

5

1    expert's report if they so desire, and the Court gave both parties more than six months in which to
2    do so.
3        Plaintiff argues that "the fact pattern here is analytically indistinguishable from the fact
4    pattern in which a party timely serves an expert report, and then, later, attempts to serve a
5    'supplemental' report that improperly contains opinions not included in the first report." Mot. at
6    3. However, none of the authorities cited by Plaintiff in support of her motion involve the
7    replacement of an expert.
8        In *Mariscal v. Graco*, 2014 WL 2919520 (N.D. Cal. June 26, 2014), the plaintiff, in
9    opposing the defendant's motion for summary judgment, submitted a declaration containing the
10   new opinions of an expert that had already provided a timely Rule 26(a) expert report. *Id.* at *4.
11   The defendant moved to exclude the expert's new opinions because the new opinions should have
12   been previously disclosed in the expert's prior report. *Id.* at *3  The plaintiff responded by
13   claiming that the expert's declaration "merely restated opinions that were earlier disclosed." *Id.*
14   The court noted that the expert's declaration "did not merely revisit opinions previously stated, but
15   it included new previously undisclosed opinions." *Id.* at *4.  Comparing the expert's first report
16   with the later declaration, the court observed that the later report "substantially enlarged the
17   scope" of the expert's "previously disclosed expert opinion." *Id.* at *5.  Therefore, the court held,
18   the second expert opinion was an "untimely and improper expert disclosure." *Id.* at *3.  The court
19   therefore excluded the expert's second report under Rule 37(c)(1) as "untimely, prejudicial and
20   made without substantial justification." *Id.* at *6.
21       In contrast, Mr. Stockton did not submit new opinions—he is no longer available, and the
22   Court therefore permitted Defendants to "replace" him with a new expert. Dkt. No. 99, ¶ 3(A).
23   Thus, substantial justification existed for Defendants to submit Mr. Haug's report. Further, Mr.
24   Haug's report is not untimely, as the close of expert discovery is not until May 22, 2015. *Id.* ¶
25   3(B). Thus, there is no prejudice because Plaintiff has not foregone the opportunity to depose the
26   new expert and may still conduct expert discovery based on the contents of the new report.
27       Plaintiff also cites *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010)
28   (involving an untimely supplemental report by the same expert that wrote the original report);

6

1  *Beller v. United States*, 221 F.R.D. 696, 697 (D.N.M. 2003) (same); and *Cohlmia v. Ardent Health*
2  *Services, LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) ("[A] supplemental expert report that states
3  additional opinions or 'seeks to "strengthen" or "deepen" opinions expressed in the original expert
4  report' is beyond the scope of proper supplementation and subject to exclusion under Rule
5  37(c)."). However, as discussed above, the present case involves the timely replacement of an
6  expert due to the unavailability of the original expert. Mr. Haug prepared an initial expert report,
7  and expert discovery remains open.

8  The Court finds that the present case more closely parallels *Palatkevich v. Choupak*, 2014
9  WL 5463371 (S.D.N.Y. Oct. 22, 2014), cited by Defendants. In *Palatkevich*, the plaintiff
10 designated a valuation expert witness who became unavailable due to a late stage terminal illness.
11 *Id.* at *1. The court granted plaintiff the opportunity to disclose a new expert on the same topics,
12 but the defendants sought to preclude not only new topics but any deviation from the valuation
13 techniques of the first expert. *Id.* The court found that the defendants "offer[ed] no compelling
14 justification for, in effect, directing that the new expert simply parrot the analysis of [the original,
15 now unavailable expert]," and that "such an approach would be inconsistent with the requirement
16 that an appointed expert is to be independent and offer his own opinions based on his experience
17 and expertise in the subject matter." *Id.* (citing *Jung v. Neschis*, 2007 WL 5256966, at *15-16
18 (S.D.N.Y. Oct. 23, 2007) (allowing new expert to replace originally designated expert who was ill,
19 but indicating that the replacement may not rely on the "opinions" of the prior expert, as opposed
20 to "facts and data" that the predecessor unearthed)). The court also noted that "plaintiffs are not
21 seeking to give their expert the last bite of the apple, but instead have fully justified obtaining a
22 new expert to provide a fresh report in view of the unavailability of their originally designated
23 expert." *Id.* at *2.

24 The same reasoning applies to the circumstances of the present case. Plaintiff cannot tailor
25 Mr. Haug's expert report to parrot the report of Mr. Stockton. Mr. Haug is an independent expert
26 with experience in law enforcement and ALPR use by law enforcement. *See* Helm Decl., Ex. 4
27 (Haug Rpt.), Dkt. No. 103-4. Further, Plaintiff is not prejudiced because she has the opportunity
28 to conduct discovery regarding Mr. Haug's opinions.

7

As to the substance of Mr. Haug's report, Plaintiff lists eight sections of the report in which she contends Mr. Haug's opinions go beyond those expressed in Mr. Stockton's report. Mot. at 5-9. The Court shall address each in turn.

1. Whether Sergeant Kim Communicated with Dispatch

First, Mr. Haug's report discusses the topic of Sergeant Kim's having allegedly communicated with dispatch to confirm the license plate while he was initiating the traffic stop of Plaintiff. Haug Rpt. at 8. Later in his report, Mr. Haug again states that as Sergeant Kim "was effecting the traffic stop[,] he broadcast the actual plate on the car (5SOW350) and the dispatcher twice confirmed that he had the correct license plate." *Id.* at 12. Plaintiff argues that Mr. Stockton's report does not discuss this topic, and neither should Mr. Haug's. Mot. at 5.

In response, Defendants argue that this fact supports the topic that Sergeant Kim acted reasonably in initiating the traffic stop in the manner he did, and that this same topic was addressed by Mr. Stockton. Opp'n at 6. Although Plaintiff may argue that Sergeant Kim acted unreasonably because he should have run the plate himself and should have done so before initiating the stop, Defendants maintain that this fact supports that Sergeant Kim does run the plate himself as soon as practicable and that in Plaintiff's scenario he still would have made the stop. *Id.*

Upon review of Mr. Haug's report, the Court finds that these sections are not separate topics. Rather, they are facts that Mr. Haug discusses in addressing the topic of whether Sergeant Kim's conduct was objectively reasonable, a topic which is also addressed by Mr. Stockton. The Court's September 16, 2014 case management scheduling order does not require Mr. Haug to utilize the same bases for his opinion in addressing the two topics addressed by Mr. Stockton.

2. Traffic Stops or High Risk Traffic Stops

Second, Plaintiff notes that Mr. Stockton's report does not mention traffic stops or "High Risk" traffic stops, but Mr. Haug's report discusses them and then opines that (1) Sergeant Kim conducted a "High-Risk" traffic stop, and (2) a reasonable officer would have done so. Mot. at 5-6. Because Mr. Stockton did not address or opine about these topics in his report, Plaintiff argues that the Court should strike these portions of Mr. Haug's report. *Id.* at 6.

8

In response, Defendants argue that the fact that traffic stops are dangerous, particularly when associated with stolen vehicles, addresses the topic of whether Sergeant Kim acted reasonably in initiating the traffic stop in the manner he did. Opp'n at 6. They note that Mr. Stockton's report specifically addresses this, stating: "The sequence and manner of events that preceded the stop, if presented to an objectively reasonable officer under similar conditions, would likely result in the same actions that were taken by Sgt. Kim." Helm Decl., Ex. C (Stockton Rpt.) at 1.

The Court agrees with Defendants. Mr. Haug's discussion of traffic stops is not a new topic, but is instead a basis for his opinion on whether Sergeant Kim acted reasonably in initiating the traffic stop.

3.  Officer's Belief that ALPR Officer Visually Verified the License Plate

Plaintiff next points out that Mr. Stockton's report contains no discussion of, or opinions on, the topic of whether a reasonable officer would believe that an officer using an ALPR system would have visually verified the ALPR's reading before broadcasting the information to other officers. Mot. at 6. In contrast, Mr. Haug's report opines that a reasonable officer would "reasonably believe that the officer using the ALPR technology would have performed a verification of the information before broadcasting it to follow [sic] officers." Haug Rpt. at 10. Plaintiff maintains that this issue is central to her case, yet Defendants first came up with this argument at the summary judgment hearing and after the initial deadline for expert disclosures. Mot. at 6-7. She argues that there is no written SFPD training or policy supporting this claimed defense, and the "topic far exceeds the scope of Mr. Stockton's report." *Id.* at 7.

In response, Defendants argue that this issue is addressed in Mr. Stockton's report. Opp'n at 6-7. Specifically, among Mr. Haug's opinions is that it would be objectively reasonable for an officer with Sergeant Kim's understanding of ALPR technology to believe that the officer broadcasting the stolen car had made a visual confirmation the plate on the electronic "hot sheet" matched the plate on the stolen car. *Id.* at 7. Defendants note that this topic is addressed in paragraphs 3-7 of Mr. Stockton's report, where he wrote that when dispatch confirmed the plate was stolen, that was "another confirmation" that the car had been confirmed stolen. *Id.* (quoting

9

Stockton Rpt. at 1). Defendants contend that it is within the scope of inquiry as to whether it was reasonable for Sergeant Kim not to second guess Officer Esparza's broadcast, and Mr. Haug provides his reasoning. *Id.*

The Court agrees with Defendants. Mr. Haug's discussion regarding ALPR technology and whether the information was visually verified goes to the topic of whether Sergeant Kim acted reasonably in initiating the traffic stop. It is not a separate topic that goes beyond the scope of the Court's scheduling order.

4. <u>SFPD's 2010 Department Bulletin Analogizing ALPR to "Electronic Hot Sheets"</u>

The fourth section Plaintiff addresses is Mr. Haug's discussion on the SFPD's use of "hot sheets," and a 2010 SFPD Bulletin analogizing the ALPR system to an "Electronic Hot Sheet." Mot. at 7. Plaintiff notes that Mr. Stockton's report does not discuss either topic, and he apparently did not review the Department Bulletin in formulating his report, given that it is not included in the list of materials he reviewed. *Id.*

Defendant argues that the training and use of ALPR like an electronic hot sheet is within the topic addressed in Mr. Stockton's report regarding SFPD's level of training and Mr. Stockton's observation of how law enforcement agencies utilize ALPR technology. Opp'n at 7-8. Defendants contend that Mr. Stockton did consider the language of the ALPR bulletin because he reviewed Sergeant Kim's deposition in which the language of the bulletin quoted by Mr. Haug was discussed. *Id.* at 7. Defendants also note that Plaintiff's own expert discusses the absence of written policies and the SFPD training as a basis as failing to conform with generally accepted police administration procedures, and that Defendants will be harmed if the jury is denied the opportunity to hear Mr. Haug's contrary opinions. *Id.*

In his report, Mr. Haug claims that "[t]he practice of the SFPD in 2009 was to treat the ALPR as an 'electronic hot sheet,'" and that an officer using a "'hot sheet' visually confirms that the plate on the suspect vehicle matches the number on the [hot] sheet, and then the officer making the match calls dispatch to confirm the plate is still listed with law enforcement authorities as a stolen or wanted plate." Haug Rpt. at 10. Mr. Haug opines that Sergeant Kim "was familiar with the use of 'hot sheets' in identifying stolen vehicles and stolen plates," and claims that, "[i]n 2010,

the SFPD disseminated a 'Department Bulletin' memorializing this practice and outlining how the ALPR system works[,]" and analogizing the ALPR system to an "electronic hot sheet." *Id.* Mr. Haug quotes the bulletin, and then opines that the SFPD's use of the ALPR in 2009 was "reasonable and consistent with most agencies' use of the technology at that time." *Id.* at 10-11.

The Court finds that this opinion goes to the topic of the level of training provided to officers in the SFPD regarding the operation of ALPR technology. While Mr. Stockton's does not explicitly discuss hot sheets or the 2010 bulletin, Plaintiff has not shown that this information was unavailable to him. As the training and use of ALPR is within the topic of the SFPD's level of training and how law enforcement agencies utilized ALPR technology, the Court finds that it is properly part of Mr. Haug's report.

5.   The Reasonableness of an Officer's Reliance on Another Officer's Information

Plaintiff also argues that it is improper for Mr. Haug to opine on the topic of whether a reasonable officer would rely on information received from another officer, as this information is missing from Mr. Stockton's report. Mot. at 8. However, the Court finds that this information goes to the topic of whether Sergeant Kim acted reasonably in initiating the traffic stop. Mr. Haug opines that "[p]olice officers are trained and learn from experience that they must reasonably rely on the statements, observations and actions of fellow officers and dispatch." Haug Rpt. at 11. He further opines that "[o]fficers routinely take enforcement action based on information they receive from fellow officers, and they are not trained to re-investigate a crime before acting on this information." *Id.* Later in his report, Mr. Haug opines that "a reasonable officer would have relied on the information given by fellow officers and dispatch—when a fellow officer (or dispatch) provides you information, you take it for face value and act on it as though it is accurate, verified information." *Id.* at 13. Again, this is not a separate topic, but is instead a basis for his opinion on whether Sergeant Kim acted reasonably in initiating the traffic stop.

6.   Burden of Visual Confirmation

Next, Plaintiff notes that Mr. Stockton's report does not opine about whether the officer using the ALPR system or the officer receiving a report from the officer using the ALPR system bears the burden of confirming that the ALPR has read a license plate correctly. Mot. at 8. In

contrast, Mr. Haug opines that "ALPR use places the burden of visual verification of the license plate on the officer who has the ALPR technology in his or her vehicle." Haug Rpt. at 13. Mr. Haug further opines that "[a] reasonable officer treating ALPR technology like a hot sheet would understand the responsibility of visual confirmation to rest on the officer with possession of the ALPR reader." *Id.* Because Mr. Stockton's report does not discuss this contention, Plaintiff argues it should be stricken from Mr. Haug's report. Mot. at 8. However, the Court finds that this is not a new topic. Like the discussion of ALPR technology in section 3 above, the Court finds that Mr. Haug's opinion goes to the topic of Sergeant Kim's conduct and whether it was reasonable to rely on Officer Esparza's radio communications. It is within the scope of this topic to inquire as to whether it was reasonable for Sergeant Kim not to second guess Officer Esparza's broadcast. Plaintiff is not prejudiced by the inclusion of this opinion.

7. <u>The Reasonableness of Sergeant Kim's Actions During the Traffic Stop</u>

In his report, Mr. Haug opines that "during the traffic stop of Ms. Green[,]" Sergeant Kim's actions "were reasonable and consistent with the expected actions of other officers in similar circumstances." Haug Rpt. at 13. Plaintiff maintains that Mr. Stockton's report does not address the topic of the reasonableness of Sergeant Kim's actions during the traffic stop itself, and this opinion should therefore be stricken. Mot. at 8. However, as Defendants note, this topic is addressed in Mr. Stockton's report: "The sequence and manner of events that preceded the stop, if presented to an objectively reasonable officer under similar conditions, would likely result in the same actions that were taken by Sgt. Kim." Stockton Rpt. at 1. Given that Mr. Stockton gives this opinion in the context of his findings regarding the reasonableness of Sergeant Kim's actions in conducting the traffic stop as a whole, it is clear that "actions that were taken by Sgt. Kim" include more than just his actions prior to the traffic stop. This finding should not be stricken.

8. <u>Exhibits</u>

Finally, Mr. Haug's report states that at trial he "may refer to or use any documents previously reviewed or identified" as the basis of his opinions, and that he "may refer to or use any exhibits, compilations, or summaries of these documents and possibly visual aids, charts, or exhibits." Haug Rpt. at 14. In contrast, Mr. Stockton's report states "[a]t this time, it is not

anticipated that any exhibits will be used." Stockton Rpt. at 4.  Plaintiff argues that the Court should preclude Mr. Haug from using exhibits or demonstrative aids at trial "since Mr. Stockton explicitly stated in his report that he would not use any." Reply at 3.  The Court finds no support for this argument, and Plaintiff provides none.  Thus, the Court determines that Mr. Haug should be permitted to utilize demonstrative exhibits at trial.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Plaintiff's Motion to Strike.

**IT IS SO ORDERED.**

Dated: April 8, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge